**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )  **Criminal  No. 00-196** |
| | )      **(Civil No. 04-1272)** |
| **STEVEN MICHAEL TIELSCH** | ) |
| | ) |

**Opinion and Order**

Before the Court is defendant Steven Michael Tielsch's *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 50).  The government filed a Response to the Motion (Doc. 53), to which Mr. Tielsch has filed a Reply (Doc. 58).

*Background*

A federal indictment was initially filed in this case on November 14, 2000.  On September 26, 2002, the government filed a superseding indictment charging the defendant, Steven Michael Tielsch, with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine (Count 1); distribution of less than 500 grams of cocaine (Count 2); distribution of less than 50 kilograms of marijuana (Count 3); and possession with intent to distribute less than 50 kilograms of marijuana (Count 4).  The evidence supporting the drug charges was discovered during the execution of a state search of Mr. Tielsch's home on February 17, 2000, by City of Pittsburgh Homicide Detectives.  Following the search Mr. Tielsch was arrested and charged with murder in state court.

The matter was continued in this court by consent of both parties until Mr. Tielsch's state charges were resolved.  Those charges were resolved when Mr. Tielsch was convicted of third degree murder on September 13, 2002.  He was sentenced to 10 to 20 years' imprisonment.  On January 16, 2003, Mr. Tielsch plead guilty in this court to Count 1 of the superseding indictment. Pursuant to the written plea agreement entered into by Mr. Tielsch and the government the

remaining Counts were to be dismissed at sentencing.  On  April 30, 2003, Mr. Tielsch was

sentenced to 216 months' imprisonment to run concurrently with his state sentence, with Mr.

Tielsch's federal sentence beginning on April 30, 2003.

Mr. Tielsch filed a timely appeal of his sentence to the United States Court of Appeals for

the Third Circuit on May 12, 2003.  Following oral argument the Court of Appeals affirmed Mr.

Tielsch's judgment of conviction and sentence in an unpublished opinion dated March 8, 2004.

United States v. Tielsch, 89 Fed. Appx. 355 (3d Cir. 2004).

### *Motion to Vacate*

On August 23, 2004, Mr. Tielsch filed a *pro se* Motion to Vacate, Set Aside, or Correct

Sentence ("Motion to Vacate"), pursuant to 28 U.S.C. §2255, in which he raised the following

claims:

> 1.  Breach of Negotiated Plea Agreement/Due Process Violation:
> Petitioner negotiated and entered into a plea agreement that would run
> the sentence in this case concurrent with the State sentence being
> served; removed and precluded the 4B1.1. (career offender) from
> being applied during the sentencing phase.  The plea breach caused
> petitioner to suffer a sentence of more than 100 months longer than
> negotiated for.  The fact that Prosecutor breached the plea, violated
> petitioner's due process rights;
>
> 2.  Ineffective Assistance of Counsel: Plea counsel, having prior and
> full knowledge that petitioner[] would not sign any plea with the
> 4B1.1. language, stood silent failing to bring to the Court's attention
> that a plea breach had in fact occurred, constituting a violation of
> petitioner's 6th amendment right to effective assistance of counsel;
>
> 3.  Imposition of Extraordinary Sentence: In the process of imposing
> sentence the Court utilized factors outside the facts stipulated to
> within the plea agreement, increasing the sentence 100 months above
> that which could have been otherwise imposed under the Sentencing
> Guidelines statutory maximum, based solely on the facts admitted in
> the guilty plea;

(Motion to Vacate (Doc. 50).)

### *Evidentiary Hearing*

When a Motion is made under 28 U.S.C. §2255, the question of whether to order a hearing is

committed to the sound discretion of the district court.  In exercising that discretion, the court must

2

accept the truth of the Petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record.  United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992).  Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief.  Id.; United States v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997).

We find no need for an evidentiary hearing as the record conclusively establishes that the Petitioner is not entitled to the relief sought in the petition.  28 U.S.C. § 2255.

### *Appointment of Counsel*

Mr. Tielsch requests that counsel be appointed to assist him in this matter (Doc. 50, at 35), and in addition has filed a separate Motion for Appointment of Counsel (Doc. 61).  The United States Supreme Court has held that "the Constitution guarantees the right to counsel on a first direct appeal, see, e. g., Douglas v. California, 372 U.S. 353, 355-358, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963), but that it guarantees no right to counsel on habeas, see, e. g., Pennsylvania v. Finley, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987)."  Wright v. West, 505 U.S. 277, 293 (U.S. 1992).  Whether to appoint counsel is a discretionary decision for the court.  Reese v. Fulcomer, 946 F.2d 247, 263-264 (3d Cir. 1991).

Our review of this case shows that the appointment of counsel will not benefit Mr. Tielsch or the court.  The factual and legal issues are not complex, and Mr. Tielsch has shown in his pleadings that he is able to present his claims intelligibly.  In addition, no evidentiary hearing is needed and the claims here are capable of resolution on the record.  Finally, as discussed below, we conclude that Mr. Tielsch's motion to vacate lacks merit.  Accordingly, we deny the request for appointment of counsel.

## I.  Standard of Review under 28 U.S.C. §2255

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction.  United States v. Cannistraro, 734 F.Supp. 1110, 1119 (D. N.J. 1989), aff'd, 919 F.2d 133 and 919 F.2d 137 (3d Cir. 1990), cert. denied, 500 U.S. 916.

3

Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997), citing Hill v. United States, 368 U.S. 424, 428 (1962).

## II. Factual Background

Mr. Tielsch raises three claims: that the government breached the plea agreement; that his counsel was ineffective in not raising or pursuing the breach of the agreement at sentencing or on appeal; and that the court unlawfully imposed an enhanced sentence by relying on facts not admitted by Mr. Tielsch nor found by a jury. All three claims concern Mr. Tielsch's allegation that he and the government had an agreement that the career offender provision would not apply to him at sentencing. The relevant factual background necessary for resolution of these claims is as follows.

During plea negotiations a Draft Plea Agreement was prepared. (Draft Plea Agreement dated November 26, 2002, Ex. 1, attached to Motion to Vacate.) Contained in the Draft Plea Agreement were the following paragraphs concerning the career offender provisions:

C. Steven Michael Tielsch and the United States Attorney further understand and agree to the following:
. . .

3.    The parties agree that the above stipulation [in paragraph C.2. regarding the quantity of cocaine attributable to the defendant] is a complete and accurate account of the offense conduct, including all relevant conduct, and therefore that under Section 2D1.1 of the Sentencing Guidelines, the base offense level is 26.

4.    The parties further agree that the adjusted base offense level should be raised by a total of eight (8) levels under the following Section of the Guidelines: 4B1.1 9Career Offender0.

4

5.      The parties also agree that the adjusted base offense level should be lowered by a total of three (3) levels under the following Section of the Guidelines: 3E1.1 (Acceptance of Responsibility).

. . .

7.      Thus, the parties agree that Steven Michael Tielsch's overall offense level under the Sentencing Guidelines is 31. If Steven Michael Tielsch is sentenced on the basis of an offense level of 31, he and the United States Attorney waive their respective rights to appeal the sentence under 18 U.S.C. §3742.

8.      The parties agree that Steven Michael Tielsch, as a career offender under Section 4B1.1 of the Sentencing Guidelines has a criminal history category of VI.

9.      The parties agree that, with an offense level of 31 and a criminal history category of VI, the defendant has a guideline range of 188-235 months under the Sentencing Guidelines. If Steven Michael Tielsch is sentenced within this guideline range, he and the United States Attorney waive their respective rights to appeal the sentence under 18 U.S.C. §3742.

Mr. Tielsch notified the government that he would not accept any plea deal containing the 4B1.1 career offender provision. (Motion to Vacate, Doc. 50, at ¶¶ 6-7; 16.) Accordingly, the above paragraphs were not included in the final, signed plea agreement. (Final Plea Agreement dated November 26, 2002, attached as Ex. 2 to Motion to Vacate.)

In addition, Paragraph B.3. of the Draft Plea Agreement, which stated that the government would recommend a sentence at the high end of the guideline range, was moved to Section C of the agreement and expanded to include parallel language stating that Mr. Tielsch would recommend a sentence at the low end of the guideline range. (See Plea Agreement, Ex. 2, at ¶ C.3.)

Both the Final and Draft Plea Agreements included paragraphs indicating the parties' agreement that there was no basis for an upward or downward departure, and that both parties would be recommending that the sentence be imposed to run concurrently with the state sentence. (See Plea Agreement, Ex. 2, at ¶¶ C.4. & C.5.; and Draft Plea Agreement, Ex.1, at ¶¶ C.6. & C.10.)

The Final Plea Agreement did not contain any explicit language as to Mr. Tielsch's offense level, criminal history, or guideline range. Paragraph B.3 of the Plea Agreement sets forth that the government will recommend a three-level reduction in the offense level for  acceptance of responsibility and states that the offense level is greater than 16. (Plea Agreement, Ex. 2, at ¶ B.3.)

5

Paragraph C.2 describes the parties's stipulation as to the quantity of cocaine to be used when determining the relevant conduct as set forth in section 1B1.3 of the Sentencing Guidelines. (Plea Agreement, Ex. 2, at ¶ C.2.)

The United States Probation Office prepared a presentence investigation report dated March 18, 2003. Mr. Tielsch's base offense level was determined to be 26, based on the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(7), and the parties' stipulation that the relevant drug quantity attributable to Mr. Tielsch was at least 500 grams but less than 2 kilograms. (Presentence Report, at ¶ 17.) Mr. Tielsch received a three-level reduction in his Offense Level based on his timely acceptance of responsibility, making his adjusted offense level a 23. (Presentence Report, at ¶¶ 23-25.)

The career offender provision was set forth in Paragraph 26 of the Presentence Report and provides as follows:

> **Chapter Four Enhancements:** As defined in U.S.S.G. § 4B1.1, a defendant is a career offender if the defendant was at least 18 years old at the time of the instant offense, the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense. As reflected in Part B (Criminal History) below, the defendant had a prior conviction on February 9, 1998, for Conspiracy to Possess With Intent to Distribute and to Distribute Cocaine at Criminal No. 87-000185; on February 1, 1993, for Homicide by Vehicle/Involuntary Manslaughter at Criminal No. 9113044; and on February 18, 1994, for Distribution and Possession With Intent to Distribute Less than 500 Grams of Cocaine at Criminal No. 93-00033. Additionally, the sentences for these convictions were counted separately under the provisions of § 4A1.1(a), (b), or (c). Therefore, pursuant to the career offender table at U.S.S.G. § 4B1.1(B), the defendant's adjusted offense level is 34, rather than the lower level calculated previously.

(Presentence Report, at ¶ 26.) After adjusting three-levels for timely acceptance of responsibility, Mr. Tielsch's Total Offense Level was 31. (Presentence Report, at ¶¶ 27-28.) Thus, with a criminal history category of VI, and an offense level of 31, Mr. Tielsch was facing a guideline range of imprisonment of 188 to 235 months. Without the career offender determination, Mr. Tielsch would have been facing a range of 92-115 months' imprisonment. Without the 3-level reduction for acceptance of responsibility, Mr. Tielsch would have been facing a range of 262 to 327 months' imprisonment.

Neither the government nor Mr. Tielsch had objections to the guideline calculations contained in the Presentence Report.  (See Position of Defendant with Respect to Sentencing Factors, Doc. 34; and Government's Position with Respect to Sentencing Factors, Doc. 35.)  Both parties however submitted sentencing briefs in accordance with their plea agreement. (Government's Sentencing Memorandum, Doc. 37; and Defendant's Memorandum in Aid of Sentencing, Doc. 38.)

The government, in its Position with Respect to Sentencing Factors, specifically pointed out that in Paragraph 26 Mr. Tielsch qualified as a career offender under the Sentencing Guidelines based on two drug trafficking convictions.  (Government's Position with Respect to Sentencing Factors, at ¶ 2.)  Mr. Tielsch did not object to the Probation Officer's finding in Paragraph 26 that Mr. Tielsch was a career offender as defined in U.S.S.G. § 4B1.1.  Mr. Tielsch did report a typographical error in Paragraph 26, which indicated as one of his prior convictions "a prior conviction on February 9, 1998, for Conspiracy to Possess With Intent to Distribute and to Distribute Cocaine at Criminal No. 87-000185."  (Memorandum in Aid of Sentencing, at 5, n.1.) Mr. Tielsch reported that the correct date of conviction of this offense was February 9, 1988.  (Id.) The court directed that the report be amended to reflect the correct conviction date.

In his present petition Mr. Tielsch claims for the first time that he "informed the Prosecutor that he would not accept a plea that would subject him to the 4B1.1 provision, and only agreed to plead guilty if the 4B1.1 was removed from the plea letter and could not be used in the sentencing phase of the case."  (Motion to Vacate, at p. 12.)  Mr. Tielsch claims that when he  rejected the career offender paragraphs of the Draft Plea Agreement the government then had to decide between removing "the 4B1.1 from the plea letter or to wholly withdraw the plea offer and take the case to trial."  (Motion to Vacate, at ¶16 & at p. 13.)  Because the Final Plea Agreement did not include the 4B1.1 language, Mr. Tielsch argues that the government thereby "creat[ed] a clear understanding for Petitioner that such would not be applied against him during sentencing and in turn served as the chief inducement for accepting the plea."  (Id.)

7

## III. Discussion

Because the career offender provision was applied at sentencing, Mr. Tielsch now claims the government breached the plea agreement. He further alleges that his counsel was ineffective for failing to raise this issue at sentencing and on appeal. As a result, he claims the Court erred in imposing a sentence above the guideline range that would have been applicable absent the career offender determination.

### 1. Breach of Negotiated Plea Agreement and Violation of Due Process

Mr. Tielsch argues that the government breached the plea agreement and thereby violated his due process rights. Specifically, Mr. Tielsch argues that the government breached the agreement by permitting the court to sentence Mr. Tielsch pursuant to the career offender provision of 4B1.1, and for not informing the court that the 4B1.1 career offender provision was not applicable to Mr. Tielsch due to the negotiated plea agreement. Mr. Tielsch argues that he suffered a "Constitutional due process violation of the 'negotiated' plea agreement wherein the 4B1.1 (career offender) ) provision was removed from the plea letter and as such precluded from being applied at the time of sentencing." (Motion to Vacate, at ¶ 15.)

Mr. Tielsch recognizes that the Final Plea Agreement does not contain a written condition that the career offender provision would not be applicable at sentencing. Nonetheless he argues that by the government removing the 4B1.1 language from the Draft Plea Agreement, Mr. Tielsch had gained "a reasonable understanding" that the 4B1.1 career offender provision would not be applicable. (Reply to Government's Response to Motion to Vacate, at p. 6-7.) Mr. Tielsch explains as follows:

> The sentence under the accepted 'negotiated' plea agreement was based on the reasonable understanding that the final adjusted level would be 23 under criminal history VI for a sentencing range of 92-115 months with no departures whatsoever. This sentence was to be imposed with the Judge being able to take into consideration the conduct from counts 2, 3 and 4 when he was weighing his decision as to where the sentence would fall within the 92-115 month range.

(Motion to Vacate, at p. 13.)

We first address Mr. Tielsch's objection to the government's characterization of his claim as asserting the existence of an "oral agreement" separate and apart from the written plea agreement. (Reply to Government's Response, at 3-4.)  Mr. Tielsch claims he never alleged there was a separate oral agreement.  (Id. at 4.)  Instead, as already stated, he claims that he would not accept a plea with the career offender provision language in it, that language was removed from the plea he signed, therefore he and the government agreed that the career offender provision would not be applied against him at sentencing.  (Id.)  Mr. Tielsch does not claim there is documentary evidence of the alleged agreement.  Rather, he relies on a comparison of the Draft Plea Agreement with the Final Plea Agreement.  He claims that the existence of the career offender language in the draft combined with its absence in the final agreement *implies* that the parties must have agreed that the career offender provision would not be applied against him at sentencing.  While we see no support for this argument, even accepting it as true, Mr. Tielsch cannot avoid the conclusion that he is claiming that he and the government had an oral agreement separate and apart from the written plea agreement.

### 1.  Procedural Bar

The government argues that Mr. Tielsch is procedurally barred from claiming that the plea agreement was breached when he was sentenced as a career offender.  The government contends that this issue was neither raised at trial nor on direct appeal, and as such the issue is defaulted and may not be raised in a section 2255 motion except under specific circumstances.  We agree. Mr. Tielsch failed to raise this issue at the Plea Hearing, the Sentencing Hearing, and on direct appeal.  In addition, he failed to raise this issue in response to the Presentence Report, even though it applied the career offender provision allegedly in violation of the plea agreement.

### a.  Plea Hearing

Mr. Tielsch never objected during his plea hearing that the plea agreement failed to include the condition that the career offender provision not be applied to him.  Mr. Tielsch explains that he did not object or inform the court of any outside promises during the plea hearing because he had a "reasonable and clear understanding" that the career offender provision would not be applied to him

at sentencing based upon his objection to its inclusion in the draft agreement and its removal from

the Final Plea Agreement.  (Reply to Government's Response, at 8.)  Because of this reasonable and

clear understanding, Mr. Tielsch claims that "there was no reason to object or to give notice of

outside promises."  (Id.)  He then concludes that "based upon actions and events, [he] gained a

reasonable and clear understanding that everything was and was not contained in the plea that would

be used for sentencing."  (Id.)

Significantly, during his plea colloquy Mr. Tielsch was given numerous opportunities to tell

the court about any other agreement, representation, promise or understanding he had that was not

contained in the written plea agreement.  (See, e.g., Transcript of Plea Hearing, January 16, 2003, at

17-20.)  Mr. Tielsch's own understanding that the government had promised him that the career

offender provision would not apply, because that language was not contained in the Draft Plea

Agreement is clearly an understanding "other than what's in the plea agreement."  (Transcript of

Plea Hearing, at 17-18.)

**b.  Sentencing Hearing**

While acknowledging that he failed to object at the plea hearing, Mr. Tielsch argues that he

did object to the career offender application at the  sentencing hearing.  Specifically, after being

asked if wished to say anything before sentence was imposed, Mr. Tielsch stated:

> Yes, sir.  Just a couple things.
> This has been a hard case for me.  When I first got my plea, they had in here career
> offender, 4B1, and that wasn't feasible, so they took it out and gave me a new plea, and in
> the plea it doesn't say anything about a career offender.  It says 1B1.3 of the Sentencing
> Guidelines with no departures, no upward departures, no downward departures.  I got down
> here, I look.  I'm a level 26.  Three points off gives me a 23.  Now I'm a 31.  He agreed no
> departures from my Guidelines, no career offender.  This is - - My first plea it says career
> offender in here.  No.  They took it out, gave me a new one.  Now I'm still a career offender.
> I just have a hard time swallowing that.
>         . . .

(Sentencing Hearing Transcript, April 30, 2003, at 18.)  Mr. Tielsch also indicated his disagreement

with the career offender determination in a footnote in his brief:

> Although this Memorandum assumes application of the career offender guideline
> provisions, Mr. Tielsch does not agree that he should be considered a career offender in the
> present case.  Since the government agreed not to seek an upward departure in the plea

10

> agreement and stated on the record during the plea colloquy that the sentencing
> enhancement for having a prior felony drug conviction does not play a part in this case, Mr.
> Tielsch asserts that the career offender guideline should not apply and that his exposure
> should be limited to his otherwise applicable guideline range of 92 to 115 months. <u>See</u>
> January 16, 2003 Transcript at 12-13.

(<u>Memorandum in Aid of Sentencing</u>, at 11-12, n.3.)

There are two distinct points here. First, Mr. Tielsch claims that the career offender

provision should not apply because in the written plea agreement the government had agreed not to

seek an upward departure; and the government stated in open court that it was not filing the

enhancement for a prior felony drug conviction. The second point is Mr. Tielsch's claim that

because there was a prior Draft Plea Agreement containing the career offender provision and a

signed plea agreement that "doesn't say anything about a career offender", the government thus

"agreed [there would be] no . . . career offender." (Sentencing Hearing Transcript, at 18.)

With regard to the first point it is true that the government explicitly agreed that there would

be no upward departure from his guideline sentence range and that no sentencing enhancement for

having a prior felony drug conviction would apply. But this has no impact on application of the

career offender provision. The implied (and mistaken) premise in Mr. Tielsch's argument is that

application of the 4B1.1 career offender provision is either an upward departure or a sentence

enhancement for having a prior felony drug conviction. It is neither.

Mr. Tielsch appears to misunderstand the difference between an upward departure or

enhancement based on prior drug convictions on one hand, and application of the 4B1.1 career

offender provisions on the other hand. Mr. Tielsch was *determined* to be a career offender under

section 4B1.1 of the Guideline, in that the court *found* that he had previously been convicted of two

prior felony controlled substances offenses as set forth in the Presentence. The government was not

required to notify Mr. Tielsch that he may be determined to be a career offender. The determination

of career offender status is a guideline calculation. The fact that he was a career offender resulted in

a higher guideline range for Mr. Tielsch than he would have faced had he not been found to be a

career offender.  Mr. Tielsch does not disagree with this determination and does not argue that the career offender category was wrongly calculated.

Section 4B1.1(b) of the Guidelines sets forth a table to determine the Offense Level for a defendant determined to be a career offender.  In general, the appropriate offense level is determined by finding the *statutory* maximum penalty the defendant faces, and assigning the corresponding offense level set forth in section 4B1.1(b).  In Mr. Tielsch's case, the statutory maximum he faced was <u>forty years</u>, resulting in an offense level of 34.

In contrast, the government explicitly agreed not to seek an *enhanced* penalty based on prior drug convictions pursuant to 21 U.S.C. § 851.  The effect of seeking such an enhancement is to "enhance" the *statutory maximum penalty* the defendant is facing, and the government must provide notice to the defendant that it is seeking such an enhancement.  In Mr. Tielsch's case, the enhanced statutory maximum was <u>Life imprisonment</u>.  The corresponding offense level for such an enhanced statutory maximum for a defendant determined to be a career offender is 37.  After applying a three-level reduction, Mr. Tielsch would have had an offense level of 34 with a corresponding *enhanced* guideline sentence range of 262 to 327 months' imprisonment.  As noted, the government did not seek such an enhancement, and none was applied.

While the Court did not directly address the career offender issue as such, since no objection was made to the *determination* that Mr. Tielsch was a career offender, the court responded in part to Mr. Tielsch's concern at sentencing.  The court explained that "The Guidelines call for 188 to 235 months' imprisonment, and nothing within that Guideline is considered to be an upward departure.  An upward departure is if the Court were to impose a sentence that exceeded 235 months of imprisonment."  (Sentencing Hearing Transcript, at 19.)  The government did not move for an upward departure from the guideline range and Mr. Tielsch was sentenced within his guideline range.

Turning to the second point, despite Mr. Tielsch's claim that the government "agreed [there would be] no . . . career offender" the record evidence only supports Mr. Tielsch's claim that the

government promised that there would be no departures from the guidelines and no enhancement for having a prior drug felony. When expressing his disagreement with the application of the career offender provision during the sentencing hearing Mr. Tielsch did not elaborate on his position from what has been cited above. Most significantly, he did not argue that the career offender designation was erroneously determined and he did not claim that the government breached the plea agreement. Instead, he appears to have expressed his belief that the government agreed that the career offender provision would not apply, rather than assert that the government actually breached a condition of the agreement. In any event, the issue of a breach was not raised at sentencing.

### c. Presentence Report

The government also notes that "upon receiving the PSR, [Mr. Tielsch] acknowledged that he was a career offender when he did not object to paragraph 26 of the PSR." (Response to Motion to Vacate, at 17.) In response, Mr. Tielsch reiterates his position that he had "a reasonable and clear understanding of the plea agreement, [and was] reasonably assured by events having transpired – namely the Career Offender clause being removed from the plea – there would be no logical or valid reason for petitioner to raise concern over what he reasonably understood to be a moot issue." (Reply to Government's Response, at 9.)

Mr. Tielsch's position is untenable. He bases his failure to object on his assertion that because he believed he and government had an agreement outside the plea agreement that there was no reason to object or to inform the court of the outside promise. (Id., at 8 &9.) To the contrary, Mr. Tielsch was first obligated to provide this information at the plea hearing when asked by the court. We conducted a colloquy with Mr. Tielsch in which we very carefully sought to ascertain whether he was pleading guilty based on outside promises or other beliefs he held, but which were not contained in the written plea agreement and were not known to the Court. He was silent.

Mr. Tielsch then had the opportunity to object to the Presentence Report. His response that he felt no need to inform the court that Paragraph 26 designating Mr. Tielsch a career offender was directly contrary to the plea agreement because he knew what was promised outside of the written

agreement is no answer.  In fact, this response shows that Mr. Tielsch indeed did have an "indication that [t]he Career Offender would be applied against" him, and thus it was imperative that he tell the Court, at least at sentencing, about his "reasonably gained understanding" of the plea agreement and therefore state that he did not want to plead guilty.  (Reply to Government's Response, at 14.)  He did not do so, and this court was never told of a breach of the plea agreement.

### d.  Direct Appeal

As Mr. Tielsch correctly notes, it is not considered a waiver of an issue if a defendant fails to properly object to the plea agreement at sentencing.  (Motion to Vacate, at ¶ 19 & Reply to Government's Response, at p. 7 (both citing United States v. Moschalaidia, 868 F.2d 1357, 1360 (3d Cir. 1989).)  The United States Court of Appeals for the Third Circuit has stated that the failure to "properly object to the plea agreement violation at the sentencing hearing . . . does not constitute a waiver" of the issue.  Moschalaidia, 868 F.2d at 1360.  In Moschalaidia, however, the Court was only considering whether the failure to present the objection at sentencing constituted a waiver of the issue on direct appeal.  Id.  Thus, the Court stated that "[w]hether or not appellant raised his objections before the trial court, he does so now on direct appeal" and the Appeals Court could properly address the claim.  Id..

In Mr. Tielsch's direct appeal he argued that the government violated his plea agreement when the government argued for a concurrent sentence to run from the date of the federal sentence rather than from the date of his state arrest.  He did not argue in his appeal that the government breached the plea agreement due to the application of the career offender provision at sentencing, and he does not claim that he did.

### 2.  Mr. Tielsch's Claims are Procedurally Barred

During the plea hearing, in response to the Presentence Report, and at sentencing Mr. Tielsch had the opportunity, and the obligation, to inform the court that he held in his mind a condition of the plea agreement that was not contained in the written plea agreement and was not communicated to the court.  He failed to do so.  Indeed, he was told at the plea hearing that he "may

14

not at a later date after today claim that there were any promises, representations, agreements, understandings or threats made by any person that motivated or caused you to enter this plea, other than those that you have the opportunity to tell me about here and now in open court?" (Transcript of Plea Hearing, at 19.)  In any event, during his sentence hearing Mr. Tielsch never claimed or argued that the government breached the plea agreement because the career offender guideline provisions were applied.  Accordingly, we find that Mr. Tielsch did not raise the issue that the government breached the plea agreement because the career offender provision was applied at sentencing.  Mr. Tielsch also could have raised this issue in his direct appeal, but he did not.  He is thus procedurally barred from raising this issue in his Section 2255 motion. See Bousley v. United States, 523 U.S. 614, 621 (U.S. 1998)  ("In this case, petitioner contested his sentence on appeal, but did not challenge the validity of his plea. In failing to do so, petitioner procedurally defaulted the claim he now presses on us.")

### 3. Cause and Prejudice

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (citing Murray v. Carrier, 477 U.S. 478, 485 & 496 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); and Smith v. Murray, 477 U.S. 527, 537 (1986); see also United States v. Frady, 456 U.S. 152, 167-68 (1982)).

To show cause, the petitioner "must establish that 'some external impediment' prevented him from raising the claim." Wise v. Fulcomer, 958 F.2d 30, 34 n. 9 (3d Cir. 1992 ) (quoting McClesky v. Zant, 499 U.S. 467 (1991); see also Frady, 456 U.S. at 170).  "Prejudice exists where 'errors at trial . . . worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions.'" Coleman v. Thompson , 501 U.S. 722, 753 (1991); Murray v. Carrier, 466 U.S. 478, 494 (1986); see also Frady, 456 U.S. at 170.  "Actual innocence" is concerned, with actual, as opposed to legal, innocence.  Calderon v. Thompson, 523 U.S. 538, 559 (1998).  "To establish actual innocence, petitioner must demonstrate that, ' "in light of all the

15

evidence,"' 'it is more likely than not that no reasonable juror would have convicted him.'"

Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995)).

The only grounds for cause for his procedural default argued by Mr. Tielsch is ineffective assistance of counsel. Ineffective assistance of counsel claims are properly brought for the first time via collateral attack in a 28 U.S.C. §2255 Motion. United States v. Thornton, 327 F.3d 268, 271-72 (3d Cir. 2003). The government argues that Mr. Tielsch's ineffectiveness claim fails to show either cause and prejudice. We address that issue next.

### B. Ineffective Assistance of Counsel

As noted, Mr. Tielsch claims that his counsel was ineffective for failing to address the government's alleged breach of the plea agreement at sentencing and on appeal. In support of his claim, Mr. Tielsch asserts that his counsel actually knew that a condition of the plea agreement was the government's promise that the career offender provision would not be applied to him. Thus, when the career offender guideline range was applied to defendant in the Presentence Report his counsel was ineffective for failing to object to this breach of the plea agreement, and for failing to pursue the issue on appeal. Mr. Tielsch also alleges that he asked his counsel both orally and in writing to address on direct appeal the issue of a breach of the plea agreement due to his being sentenced as a career offender, but counsel failed to do so. (Motion to Vacate, at p. 2-3; 17; 25; 29.)[1]

### 1. Applicable Law

"A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance

---

[1] Mr. Tielsch also claims that the ineffectiveness dates back even before the Presentence Report was issued. At the change of plea hearing he claims that counsel failed to object when the government entered into the record information from the rejected Draft Plea Agreement, specifically when he stated "it appears to the parties that the guidelines would be 188 to 235 months, . . ." (Transcript of Plea Hearing, at 17; Motion to Vacate, at p. 2-3; 17; 25.) As already explained, however, Mr. Tielsch himself failed to object during the plea hearing and failed to explain the outside promise made by the government despite being given numerous opportunities to do so.

prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993); Strickland v. Washington, 466 U.S. 668, 687-688 (1984), cert. denied, 510 U.S. 1028 (1993). "To establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694).

In assessing the first prong, the Supreme Court has instructed that "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. This is an objective standard, and must be "viewed to the extent possible without 'the distorting effects of hindsight.'" Duncan v. Morton, 256 F.3d 189, 200 (3d Cir. 2001) (quoting Strickland, 466 U.S. at 688-90). In addition, a "reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" McAleese, 1 F.3d at 175 (quoting Strickland, 466 U.S. at 692).

Addressing the second part of the Strickland analysis, the prejudice prong, the Supreme Court has explained that a "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. at 694. In making the prejudice determination, the court must consider the totality of the evidence. Id. at 695.

A claim of ineffective assistance must identify the specific errors counsel has made. Conclusory allegations are not sufficient to support a petition under Section 2255. Blackledge v. Allison, 431 U.S. 63, 74 (1977).

## 2. Analysis of Ineffectiveness Accepting Mr. Tielsch's Claims as True

The government argues that counsel's decision not to pursue this issue on appeal does not fall below an objective standard of reasonableness. The government argues that on appeal his counsel pursued the most worthy issue, which was whether the government violated the plea agreement in arguing that a concurrent term should begin on the date the federal sentence was imposed. That issue was the subject of the parties' briefs and oral arguments at sentencing. In addition, the Appeals Court deemed the issue worthy enough to warrant oral argument.

The government contrasts counsel's decision to pursue an issue that was preserved for appeal in written briefs and oral argument before the sentencing court, with his decision not to pursue an issue that was not preserved before the court below in either briefs or oral argument and which concerned an oral agreement unsupported by express documentary evidence.  Moreover, based on the lack of record evidence preserving or supporting this issue, the government argues that the issue of the alleged breach of an oral plea agreement had little chance of success on appeal.  Thus, the government concludes that counsel's decision not to pursue the issue now asserted by Mr. Tielsch was a sound decision and does not fall below an objective standard of reasonableness and does not demonstrate a deficient performance.

We note that counsel is not ineffective simply for failing to raise an issue on appeal, provided that the representation was reasonable professional conduct.  Jones v. Barnes, 463 U.S. 745, 754 (1983).  There is no evidence before us to indicate that appellate counsel's conduct in this case was in any way constitutionally deficient.  Even assuming that Mr. Tielsch's counsel actually knew that there was an oral agreement between the parties as alleged, we agree with the government that counsel's decision not to pursue the issue on appeal does not constitute ineffective assistance of counsel.  Given the record evidence in this case there was virtually no chance of success on this issue on appeal.  Thus, we find that counsel was not ineffective for failing to pursue this issue on appeal.

## 2. Analysis of Ineffectiveness Accepting only Mr. Tielsch's Nonfrivolous Claims

We need only credit Mr. Tielsch's nonfrivolous factual claims in support of his ineffectiveness claims.  Day, 969 F.2d at 41-42.  As explained below, we find that Mr. Tielsch's claim that the government and Mr. Tielsch agreed that the career offender provision in 4B1.1 would not be applied to him is a frivolous claim that we need not credit.

Mr. Tielsch claims that the government, Mr. Tielsch, and his counsel understood that a condition of the plea agreement was that the career offender provision would not be applied to Mr. Tielsch.  He notes that the career offender language in the Draft Plea Agreement was removed after

18

Mr. Tielsch objected. The final written plea agreement did not include the condition that the career offender guidelines would not be applied to Mr. Tielsch. Nonetheless, according to Mr. Tielsch, the fact that it was in the draft, but not in the final agreement, demonstrates the existence of the agreement. Mr. Tielsch's argument has no merit.

The government presented Mr. Tielsch with a draft agreement that included proposed conditions to which Mr. Tielsch could agree or not agree. In part, the government proposed the following conditions: (i) that Mr. Tielsch agree that his adjusted base offense level should be raised eight levels under 4B1.1; (ii) that his final offense level is 31; (iii) that he is a career offender pursuant to 4B1.1 with a criminal history category of VI; and (iv) that his guideline range is 188 to 235 months' imprisonment. (Draft Plea Agreement, Ex. 1, at ¶¶ 4,7, 8, & 9.)

This is not unusual. The government and a defendant could independently calculate the *expected* guideline range by using the United States Sentencing Commission's Guidelines Manual. Thereafter, the government and defendant can agree in writing as to what they believe the actual guideline range will be, and make that agreement part of the plea agreement. In most cases, the parties prediction will be accurate. However, as explained to Mr. Tielsch during the plea hearing the Court cannot determine what the *actual* guideline sentence range is until after a Probation Officer completes a presentence Report and both the government and defense counsel have had a chance to object to the report. (Transcript of Plea Hearing, at 13-14.)

Mr. Tielsch would not agree to the government's proposed conditions regarding his guideline range and career offender status, and thus they were removed from the plea agreement. Certainly the government is permitted to propose that a defendant agree to a guideline calculation, and a defendant is free to reject the proposal. Likewise, the government is free to agree with a defendant's proposal that a specific guideline provision that is otherwise applicable, not be applied to the defendant, as Mr. Tielsch claims happened in his case. Critically, however, the government and Mr. Tielsch did not include any provision or condition in his executed written plea agreement acknowledging that the parties *agreed* that the career offender provisions of 4B1.1 would not be

applied to him.  Lacking any reason to the contrary, a Probation Officer will apply all relevant and valid guideline provisions to a defendant.

Mr. Tielsch's argument that the removal of a proposed condition from a draft plea letter is proof of an agreement that the excised proposed condition is not applicable to him is spurious for another reason.  The parties removed from the Draft Plea Agreement a proposed condition agreeing that Mr. Tielsch's base offense level is 26 pursuant to section 2D1.1.  (Draft Plea Agreement, Ex. 1, at ¶ 3.)  By Mr. Tielsch's logic, the removal of this proposed condition demonstrates that he and the government agreed that his base offense level was not 26 pursuant to section 2D1.1.  But even Mr. Tielsch does not believe this as he asserts that he understood that "the Sentencing Guideline base level of 26 would be used."  (Motion to Vacate, at 19.)  He supports this assertion by noting that the base offense level of 26 was "substantiated within the original [i.e., the draft] plea letter."  (Id.)

Mr. Tielsch immediately continues in the same sentence to explain that he also understood "that the removal of the 4B1.1 language from the negotiated and final plea assured that such could not be applied against him."  (Id.)  Thus, in one contradictory sentence, Mr. Tielsch argues that proposed conditions which were removed from the Draft Plea Agreement both  "substantiate" a guideline calculation he agrees with; and demonstrate the inapplicability of a guideline calculation he does not agree with.  In fact, as explained above, a Probation Officer calculates all relevant and applicable guideline provisions consistent with the plea agreement and the law.  This is what happened here.  There was no agreement that the career offender provision would not be applied.

Significantly, Mr. Tielsch fails to explain sufficiently why, if he really believed he had struck a deal prohibiting the application of the career offender provision: (i) he did not in any of the several opportunities he had during his plea hearing inform the Court that there was indeed a promise made not contained in the written plea agreement; (ii) he did not object to the Presentence Report in writing to explain that the government had agreed that the career offender provision would not be applied in exchange for Mr. Tielsch's plea; or (iii) why when he did speak at the sentencing hearing he complained that inclusion of the career offender provision was contrary to the plea agreement's

20

explicit condition that the government would not seek an upward departure, but failed to complain that the government actually agreed that the career offender provisions would not apply.

In addition, we note that the Third Circuit Court of Appeals in addressing Mr. Tielsch's claim on appeal of a breach of the plea agreement stated:

> At no time during this period did Tielsch indicate that the government had breached the plea agreement, or that he wished to withdraw his plea based on a misunderstanding as to the terms of the agreement.

Tielsch, 89 Fed. Appx. at 357. The same is true of the present issue. At no time did Mr. Tielsch indicate that the government had breached the plea agreement, or that he wished to withdraw his plea based on the government not living up to a term of the plea agreement. Likewise, Mr. Tielsch "made an informed decision to go forward with the plea agreement" after learning that he was determined to be a career offender and such would be applied against him at sentencing. Id. We view Mr. Tielsch's present "claim of breach [as] nothing more than a pretext to get a second bite at the sentencing apple after suffering an unfavorable, but not completely unexpected, decision." Id.

There being no reasonable basis for Mr. Tielsch's belief that the career offender provision would not be applicable to him simply because it was removed from a Draft Plea Agreement, and in light of Mr. Tielsch's failure from the plea hearing through his appeal to even mention the existence of the alleged oral promise not contained in the written plea agreement, we find not credible Mr. Tielsch's claim that he actually believed that he had an oral agreement with the government that the career offender provision would not be applicable to him at sentencing.

Accordingly, we find that his counsel was not ineffective for failing to raise or pursue this issue when viewing Mr. Tielsch's nonfrivolous claims.

### 4. Actual Innocence

Mr. Tielsch does not claim that he was actually innocent. He readily admitted his guilt at the plea hearing. When asked why he was pleading guilty, Mr. Tielsch responded "I was involved in selling the drugs with other people." (Transcript of Plea Hearing, at 20.) There being no basis for a claim of either cause and prejudice or actual innocence to excuse Mr. Tielsch's procedural default of

this issue, we find that Mr. Tielsch is procedurally barred from raising this claim in the present section 2255 petition.

### C. Imposition of Extraordinary Sentence

Mr. Tielsch's remaining claim is that the court unlawfully imposed an enhanced sentence by relying on facts not admitted by Mr. Tielsch nor found by a jury.

Mr. Tielsch claims that the court used factors outside the facts stipulated to within the plea agreement to increase his sentence 100 months above that which could have been otherwise imposed under the Sentencing Guidelines.  This claim fails for the reasons already set forth above to the extent it depends upon Mr. Tielsch's argument that his plea agreement included a condition that the career offender provision of the Guideline would not be applicable to Mr. Tielsch.  This claim also fails because it is procedurally barred, as explained above.  In addition, to the extent that Mr. Tielsch is claiming that he is not a career offender, that issue is also procedurally barred as he never raised this issue at any other time.  Moreover, in his present petition, he does not now directly claim that his determination as a career offender was erroneous.

Mr. Tielsch also asserts a "Blakely/Booker"[2] challenge.  (Reply to Government's Response, at 12-13.)  Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), was handed down well

---

[2]  The United States Court of Appeals for the Third Circuit explained that

> some courts, when considering the issues now before us, refer to the "Blakely rule" and others refer to the "Booker rule." We believe it is appropriate to refer to the "Booker rule." It is the date on which Booker issued, rather than the date on which Blakely issued, that is the "appropriate dividing line." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005). Blakely, as the Court of Appeals for the Seventh Circuit pointed out, reserved decision about the status of the Federal Sentencing Guidelines, and Booker established a new rule for the federal system. See id.

Lloyd v. United States, 407 F.3d 608, 611 n.1 (3d Cir. 2005).

after Mr. Tielsch's sentence and direct appeal, and the issues raised in <u>Blakely</u> were finally settled by the United States Supreme Court in <u>United States v. Booker</u>, 543 U.S. ___ , 125 S. Ct. 738 (2005).

The United States Court of Appeals for the Third Circuit has determined that <u>Booker</u> challenges are not applicable to collateral review claims like Mr. Tielsch's. <u>Lloyd v. United States</u>, 407 F.3d 608 (3d Cir. 2005). In <u>Lloyd</u>, the Third Circuit court held that although the rule announced in <u>Booker</u> qualifies as a new rule or criminal procedure, it is not to be applied retroactively to prisoners whose judgment was final and who are in the initial § 2255 motion stage as of the date that the <u>Booker</u> decision was issued. "Because <u>Booker</u> announced a rule that is 'new' and 'procedural,' but not 'watershed,' <u>Booker</u> does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date <u>Booker</u> issued." <u>Lloyd</u>, 407 F.3d at 616-617. Accordingly, the rule announced in <u>Booker</u> is not applicable to Mr. Tielsch given that his judgment was final and he was in the initial § 2255 motion stage as of the date that the <u>Booker</u> decision was issued.

### D. Certificate of Appealability

The remaining issue before this Court is whether a certificate of appealability ("COA") should be issued with respect to Mr. Tielsch's motion to vacate. In <u>Slack v. McDaniel</u>, 529 U.S. 473, 120 S.Ct. 1595 (2000), the United States Supreme Court held that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. <u>Slack</u>, 529 U.S. at 484. Here, we find that jurists of reason would not find it debatable whether Mr. Tielsch states a valid claim of the denial of a constitutional right and jurists

of reason would not find it debatable whether we were correct in our procedural ruling that his motion was procedurally barred. Accordingly, a certificate of appealability will not be issued with respect to Petitioner's motion to vacate.

## IV. Conclusion

Mr. Tielsch's section 2255 motion and his motion for appointment of counsel will be denied, and a certificate of appealability will not be issued.

Accordingly, the following order is therefore entered.

AND NOW, to-wit, this _17th_ day of August, 2005, for the reasons stated above, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 50), be and hereby is DENIED.

2. Petitioner's Motion for Appointment of Counsel (Doc. 61), be and hereby is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that a certificate of appealability SHOULD NOT ISSUE with respect to this Court's instant Order denying Mr. Tielsch's § 2255 Motion because, for the reasons set forth in the Opinion accompanying this Order which addresses his § 2255 Motion, Mr. Tielsch has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). See also Third Circuit Local Rule 22.2 (stating that "[i]f an order denying a petition under . . . § 2255 is accompanied by an opinion . . . it is sufficient if the order denying the certificate [of appealability] references the opinion . . . .").

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior United States District Judge

cc:    Steven Michael Tielsch, *pro se*
       FK-4834
       SCI-Greensburg
       R.D. 10
       Box 10
       Greensburg, PA 15601


       Kelly Labby, AUSA          (by electronic mail)
       United States Attorney's Office
       700 Grant Street, Suite 400
       Pittsburgh, PA 15219